IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

EUGENE MASON,

    Plaintiff,

v.

AMTRUST FINANCIAL SERVICES, INC. and
DAVID LEWIS,

    Defendants.

Civil Action No. 19-CV-8364 (DLC)

---

**MEMORANDUM OF LAW ON BEHALF OF PLAINTIFF EUGENE MASON IN
OPPOSITION TO DEFENDANTS' MOTION UNDER FED. R. CIV. P. 12(B)(6) TO
DISMISS COUNTS I-IV OF THE AMENDED VERIFIED COMPLAINT**

---

JARDIM, MEISNER & SUSSER, P.C.
420 Lexington Avenue, Suite 300-19
New York, NY 10170
(973) 845-7640
Attorneys for Plaintiff, Eugene Mason

Of Counsel and on the Brief:
  Richard S. Meisner
  Richard A. Catalina, Jr.

## TABLE OF CONTENTS

Page(s)

**TABLE OF AUTHORITIES** ................................................................. i

**PRELIMINARY STATEMENT** ........................................................... 1

**LEGAL ARGUMENT** ..................................................................... 3

### POINT I
THE LEGAL STANDARD ON A MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) ......................................................... 3

### POINT II
DEFENDANTS' MOTION TO DISMISS IS FRAUGHT WITH
DISPUTED FACTUAL ISSUES ............................................................. 7

### POINT III
SECOND CIRCUIT LAW DEMANDS THAT DEFENDANTS'
MOTION TO DISMISS BE DENIED IN ITS ENTIRETY ................................. 19

**CONCLUSION** ........................................................................... 24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

A.F.A. Tours, Inc. v. Whitchurch,
 937 F.2d 82 (2d Cir. 1991)......................................................................................6

All Pro Sports Camp v. Walt Disney Co.,
 727 So. 2d 363 (5th DCA 1999) ...........................................................................23

Am. Bldg. Maintenance Co. of New York v. ACME Prop. Servs.,
 515 F. Supp.2d 298 (N.D.N.Y. 2007)....................................................................6

Ashland Mgt. Inc. v. Janien,
 82 N.Y.2d 395, 624 N.E.2d 1007, 604 N.Y.S.2d 912 (1933)................................6

Bankers Trust Co. v. Rhoades,
 859 F.2d 1096 (2d Cir. 1988), cert. denied, 490 U.S. 1007, 109 S. Ct. 1642,
 104 L. Ed. 2d 158 (1989)........................................................................................5

Banks v. Corr. Servs. Corp.,
 475 F. Supp. 2d 189 (E.D.N.Y. 2007) ...................................................................6

Brass v. American Film Technologies, Inc.,
 987 F.2d 142 (2d Cir. 1993)...................................................................................4

Camp Creek Hospitality, Inc. v. Sheraton Franch. Corp.,
 139 F.3d 1396 (11th Cir. 1998) ...........................................................................23

Capital Asset Research Corp. v. Finnegan,
 160 F.3d 683 (11th Cir. 1998) ..............................................................................23

CDI Int'l, Inc. v. Marck,
 2005 U.S. Dist. LEXIS 23060 (E.D. Pa 2005) ................................................ 22-23

Continental Data Systems, Inc. v. Exxon Corp.,
 638 F. Supp. 432, 441 (E.D. Pa 1986) .................................................................23

Cortec Indus., Inc. v. Sum Holding L.P.,
 949 F.2d 42 (2d Cir. 1991)......................................................................................4

Conley v. Gibson,
 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)..................................................3

Cosmas v. Hassett,
 886 F.2d 8 (2d Cir. 1989) ........................................................................................5

i

Del Monte Fresh Produce Co. v. Dole Food Co.,
   136 F. Supp. 2d 1271, 1292-93 (S.D. Fl. 2001)........................................................23

DeLuca v. AccessIT Group, Inc.,
   695 F. Supp. 2d 54, 63 (S.D.N.Y. 2010)............................................................ 5-6

DiBlasio v. Novello,
   344 F.3d 292 (2d Cir. 2003)..................................................................................5

Easton v. Sundram,
   947 F.2d 1011 (2d Cir. 1991), cert. denied, 504 U. S. 911, 112 S. Ct. 1943,
   118 L. Ed. 2d 548 (1992)......................................................................................4

E.S. Originals Inc. v. Totes Isotoner Corp.,
   734 F. Supp. 2d 523 (S.D.N.Y. 2010)..................................................................5

FDIC v. Pelletreau & Pelletreau,
   965 F. Supp. 381 (E.D.N.Y. 1997) ...................................................................4, 5

Gant v. Wallingford Bd. of Educ.,
   69 F.3d 669 (2d Cir. 1995)....................................................................................5

Goldman v. Belden,
   754 F.2d 1059 (2d Cir. 1985)............................................................................3, 4

Grandon v. Merrill Lynch & Co.,
   147 F.3d 184 (2d Cir. 1998)..............................................................................3, 4

I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.,
   936 F.2d 759 (2d Cir. 1991)..................................................................................4

Impax Media, Inc. v. Ne. Adver., Corp.,
   2018 U.S. Dist. LEXIS 139972 (S.D.N.Y. 2018) .................................................6

In re Health Mgmt. Inc. Sec. Litig.,
   970 F. Supp. 192 (E.D.N.Y. 1997) ...................................................................4, 5

IUE AFL-CIO Pension Fund v. Herrmann,
   9 F.3d 1049 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86, 130 L.
   Ed. 2d 38 (1994) ...............................................................................................3-4

Kosower v. Gutowitz,
   No. 00-CV-9011, 2001 U.S. Dist. LEXIS 19111 (S.D.N.Y. 2001).......4, 5, 6, 21-22

LaBounty v. Adler,
   933 F.2d 121 (2d Cir. 1991)..................................................................................4

Laser Indus. v. Eder Instrument Co.,
    573 F. Supp. 987 (N.D. Ill 1983)XX ....................................................................23

Lear Siegler, Inc. v. Ark-Ell Springs, Inc.,
    569 F.2d 286 (5th Cir. 1978) ...........................................................................23

Leeds v. Meltz,
    85 F.3d 51 (2d Cir. 1996) ...........................................................................4, 5

Lehman v. Dow Jones & Co., Inc.,
    783 F.2d 285 (2d Cir. 1986)............................................................................20

Levitt v. Bear Stearns & Co., Inc.,
    340 F.3d 94 (2d Cir. 2003)..............................................................................6

Malin v. Ivax Corp.,
    17 F. Supp. 2d 1345 (S.D. Fla. 1998) ...............................................................23

Medtech Prods. v. Ranir, LLC,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008)....................................................... 6, 20-21

Messina v. Mazzeo,
    854 F. Supp. 116 (E.D.N.Y. 1994) ..................................................................4, 5

New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.,
    697 F. Supp. 2d 415 (W.D.N.Y. 2010) .................................................................5

Oneida Grp., Inc v. Steelite Int'l U.S.A., Inc.,
    2017 U.S. Dist. LEXIS 206717 (E.D.N.Y. 2017)....................................................6

Ortiz v. Cornetta,
    867 F.2d 146 (2d Cir. 1989)............................................................................5

Paulemon v. Tobin,
    30 F.3d 307 (2d Cir. 1994)............................................................................4

Pennfield Precision, Inc. v. EF Precision, Inc.,
    2000 U.S. Dist. LEXIS 11971 (E.D. Pa. 2000) ...................................................22

Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,
    879 F.2d 10 (2d Cir. 1989), cert. denied, 493 U.S. 1022, 110 S. Ct. 723, 107
    L. Ed. 2d 743 (1990) ..............................................................................4-5

Project Development Group, Inc. v. O.H. Materials Corp.,
    766 F. Supp. 1348 (W.D. Pa. 1991), aff'd without op., 993 F.2d 225 (3d Cir.
    1993) .........................................................................................................22

Protocomm Corp. v. Fluent, Inc.,
    Civ. A. No. 93-0518, 1995 U.S. Dist. LEXIS 40, 1995 WL 3671 (E.D. Pa.
    1995) ...................................................................................................................................22

Rent Stabilization Ass'n of the City of New York v. Dinkins,
    5 F.3d 591 (2d Cir. 1993) ...................................................................................................4

Samuels v. Air Transport Local 504,
    992 F.2d 12 (2d Cir. 1993)...................................................................................................4

Scheuer v. Rhodes,
    416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)........................................................5

SD Protection, Inc. v. Del Rio,
    498 F. Supp. 2d 576 (E.D.N.Y. 2007) .............................................................................6, 21

Shomo v. City of New York,
    579 F.3d 176 (2d Cir. 2009)..................................................................................................5

Skeete v. IVF America, Inc.,
    972 F. Supp. 206 (S.D.N.Y. 1997).......................................................................................4

Villager Pond, Inc. v. Town of Darien,
    56 F.3d 375 (2d Cir. 1995)....................................................................................................5

Yajure v. DiMarzo,
    130 F. Supp. 2d 568 (S.D.N.Y. 2001)..................................................................................6

**Statutes and Regulations**

18 U.S.C. §1831 ............................................................................................................................18

18 U.S.C. §§1831-1839 ..............................................................................................................1, 18

18 U.S.C. §1836(b)(3) ............................................................................................................... 13-14

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................... *passim*

**Other Authorities**

1 R. Milgram, Milgram on Trade Secrets, §2.03, at 2-47 to 2-49 (1990)........................................6

1 R. Milgram, Milgram on Trade Secrets, §2.23 at 2-32 to 2-33 (1984).....................................23

Restatement of Law, Third, Unfair Competition, §39, cmt. d .....................................................23

## PRELIMINARY STATEMENT

This brief is submitted on behalf of plaintiff Eugene Mason ("Plaintiff") in opposition to the motion by defendants AmTrust Financial Services, Inc. ("AmTrust") and David Lewis ("Lewis") (collectively, "Defendants") (*ECF Nos.* 29-32) seeking to dismiss Counts I-IV of Plaintiff's Amended Verified Complaint (the "AVC")[1] (*ECF No.* 28) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth herein, Defendants' motion is fundamentally flawed, fails to adhere to the applicable legal standards, and woefully falls short of establishing that Defendants are entitled to dismissal of the AVC as a matter of law.

The AVC sets forth with detailed specificity the facts giving rise to each of Plaintiff's claims against Defendants. See AVC, ¶¶18-85. Included in the comprehensive factual allegations of the AVC, the contents of which are incorporated by reference herein in their entirety, are the following: (1) the chronology and history of Plaintiff's development of his proprietary trade secret software program (defined in the AVC as the "Mason Proprietary Pricing Tool" or, simply, the "Pricing Tool" ¶¶1, 20) over a twelve (12) year period prior to his employment with AmTrust (AVC, ¶¶18-22); (2) a basic, yet detailed, overview of the Pricing Tool's various features, modules and utilities (AVC, ¶¶23-42); (3) the extraordinary vast amounts of data accessed, obtained, compiled and processed by Plaintiff over the many years and incorporated into the Pricing Tool's functionality (AVC, ¶¶43-48); (4) the details of Plaintiff's hiring by AmTrust to create a new professional liability business/product line, including the meeting and various communications

---

[1] The AVC sets forth five (5) counts against Defendants based on the following causes of action: Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. §§1831-1839 (Count I); Misappropriation of Trade Secrets and Confidential Information under New York Common Law (Count II); Unjust Enrichment (Count III); Breach of Implied License (Count IV); and Breach of Contract Pertaining to Employment Compensation (Count V). In their motion, Defendants do not seek dismissal of Count V at this time.

between Plaintiff and Defendants regarding Plaintiff's Pricing Tool and the agreement reached by the parties whereby Plaintiff would permit Defendants to use his trade secret software program during Plaintiff's employment tenure with AmTrust (defined as therein as the "License") (AVC, ¶¶49-60); (5) the specific steps, measures and actions undertaken by Plaintiff to maintain and protect his proprietary interest and ownership in his Pricing Tool – a trade secret, per se, under the law (AVC, ¶¶61-70); (6) Plaintiff's refusal to assign over his Pricing Tool to AmTrust after AmTrust demanded that he do so (AVC, ¶¶71-76); and, finally, (7) AmTrust's retaliatory termination of Plaintiff as a result of his refusal to hand over his trade secret and AmTrust's breach of the employment agreement with Plaintiff and the implied license as to Defendants' conditioned use of Plaintiff's proprietary property and trade secret in violation of Plaintiff's rights.

To this day, Defendants continue to use Plaintiff's Pricing Tool in violation of those rights – on the one hand, arguing that the trade secret is a mere "generic spreadsheet," and, on the other hand, acknowledging its incredible value by refusing to cease and desist from using it.

Defendants' motion is fundamentally flawed and fails in all respects to apply the applicable legal standards for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). As detailed herein, Defendants do not in any sense accept as true the allegations of the AVC and all reasonable inferences that may be drawn from those factual allegations. Instead, Defendants challenge the allegations by disputing the verified facts, attacking Plaintiff's veracity and the truth of his claims, and hurling reckless and disparaging remarks. Defendants' strategy must fail on its face as a matter of law. Indeed, the very self-inflicted factual disputes raised by Defendants are fatal to its motion.

It is bedrock Second Circuit law that a motion to dismiss must be denied when the factual allegations are, as is the case here, disputed. Even more compelling, this Circuit has held repeatedly that allegations of trade secret misappropriation and related claims must not be

dismissed since those claims all but certainly comprise issues of fact that must be tested in discovery and litigated. It is not the function of a court on a motion brought under Fed. R. Civ. P. 12(b)(6) to weigh the evidence and resolve competing versions of the facts. This is particularly so where, as is the case here, the allegations concern misappropriation of trade secrets and issues and necessarily involve (as raised by Defendants in their motion) defenses as to whether the claimed trade secret actually comprises a protectable trade secret; the nature, level and extent the claimant sought to protect the trade secret; and whether the defendant misappropriated the trade secret. As noted by the Second Circuit Court of Appeals, such questions are per se issues of fact and cannot be decided at the motion to dismiss stage.

In sum, Defendants' motion is – at best – premature and must be denied in its entirety. Plaintiff is entitled to litigate his claims and pursue through discovery from Defendants and their agents and employees all available evidence that supports his claims.

## LEGAL ARGUMENT

### POINT I

### THE LEGAL STANDARD ON A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998); *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)); see also *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052-53 (2d Cir. 1993), cert. denied, 513 U.S.

822, 115 S. Ct. 86, 130 L. Ed. 2d 38 (1994); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), cert. denied, 504 U. S. 911, 112 S. Ct. 1943, 118 L. Ed. 2d 548 (1992); *In re Health Mgmt. Inc. Sec. Litig.*, 970 F. Supp. 192, 199 (E.D.N.Y. 1997); *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994); *Kosower v. Gutowitz*, No. 00-CV-9011, 2001 U.S. Dist. LEXIS 19111 (S.D.N.Y. 2001) at *3.

The Second Circuit has held that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993); see also *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994); *Rent Stabilization Ass'n of the City of New York v. Dinkins*, 5 F.3d 591, 593-94 (2d Cir. 1993) (citing *Samuels*, 992 F.2d at 15); *FDIC v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 384-85 (E.D.N.Y. 1997); *Messina*, 854 F. Supp. at 128. The court may further consider documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. See *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991); *Skeete v. IVF America, Inc.*, 972 F. Supp. 206, 208 (S.D.N.Y. 1997).

On a motion to dismiss, however, it is *not* the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, see *Goldman*, 754 F.2d at 1067 (emphasis supplied); *Kosower*, 2001 U.S. Dist. LEXIS 19111 at *3, and in doing so, it is well settled that the Court *must* accept the allegations of the complaint as true, see *Grandon*, 147 F.3d at 188; *Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991); *Procter & Gamble Co. v. Big Apple Indus.*

*Bldgs, Inc.*, 879 F.2d 10, 14 (2d Cir. 1989), cert. denied, 493 U.S. 1022, 110 S. Ct. 723, 107 L. Ed.

2d 743 (1990) (emphasis supplied), and construe all reasonable inferences in the plaintiff's favor.

See *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Leeds*, supra,

85 F.3d at 51; *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995); *Cosmas v.*

*Hassett*, 886 F.2d 8, 11 (2d Cir. 1989); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d

Cir. 1988), cert. denied, 490 U.S. 1007, 109 S. Ct. 1642, 104 L. Ed. 2d 158 (1989); *In re Health*

*Mgmt. Inc. Sec. Litig.*, 970 F. Supp. at 199; *FDIC*, 965 F. Supp. at 385; *Kosower*, 2001 U.S. Dist.

LEXIS 19111 at *2.

As such, the issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff

will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim."

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (citing *Scheuer*, supra, 416

U.S. at 235-36). Recovery may appear remote and unlikely on the face of the pleading, but that is

not the test for dismissal under Rule 12(b)(6). *Gant*, 69 F.3d at 673 (citing *Scheuer*, supra, 416

U.S. at 236); *In re Health Mgmt. Inc. Sec. Litig.*, 970 F. Supp. at 199; *FDIC*, 965 F. Supp. at 385.

The court must accept all allegations in the complaint as true and draw all reasonable inferences

in favor of the plaintiff. *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009); *Ortiz v.*

*Cornetta*, 867 F.2d 146, 149 (2d Cir. 1989); *Messina*, 854 F. Supp. at 128; *New York State Elec.*

*& Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F. Supp. 2d 415, 425 (W.D.N.Y. 2010); *Kosower*, 2001

U.S. Dist. LEXIS 19111 at *2.

Significantly, and critical to the motion before this Court, is the bedrock principle that "a

disputed issue of fact . . . is inappropriate to consider in the context of a Rule 12(b)(6) motion."

*DiBlasio v. Novello*, 344 F.3d 292, 304 (2d Cir. 2003); see also *E.S. Originals Inc. v. Totes Isotoner*

*Corp.*, 734 F. Supp. 2d 523, 528 (S.D.N.Y. 2010); *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp.

2d 54, 63 (S.D.N.Y. 2010); *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007) (stating that, on a Rule 12(b)(6) motion, "[t]he Court's task 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof'" (quoting *Levitt v. Bear Stearns & Co., Inc.*, 340 F.3d 94, 101 (2d Cir. 2003))); *Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 571-72 (S.D.N.Y. 2001) ("The role of a district court in considering a motion to dismiss is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." (citation and internal quotation marks omitted)).

Motions to dismiss are particularly ill-suited and frowned upon by the courts where, as is the case here, the plaintiff's allegations concern misappropriation of trade secrets. See *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir. 1991) (holding that the question of whether information is secret is "generally a question of fact"); *Medtech Prods. v. Ranir, LLC*, 596 F. Supp. 2d 778, 805 (S.D.N.Y. 2008) ("[T]he secrecy of particular information is an issue of fact and cannot be decided at the motion to dismiss stage."); *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 585-86 (E.D.N.Y. 2007); *Kosower*, 2001 U.S. Dist. LEXIS 19111 at *8-9; *Oneida Grp., Inc v. Steelite Int'l U.S.A., Inc.*, 2017 U.S. Dist. LEXIS 206717 at *18 (E.D.N.Y. 2017); see also 1 Milgram §2.03, at 2-47 to 2-49 (1990) ("existence of a trade secret is a question of fact for the determination of the trier of fact, secrecy being a basic element"). That is, whether information constitutes a trade secret depends upon a variety of factors and is generally a question of fact. *Ashland Mgt. Inc. v. Janien*, 82 N.Y.2d 395, 407, 624 N.E.2d 1007, 604 N.Y.S.2d 912 (1933); *Am. Bldg. Maintenance Co. of New York v. ACME Prop. Servs.*, 515 F. Supp.2d 298, 308 (N.D.N.Y. 2007); *Impax Media, Inc. v. Ne. Adver., Corp.*, 2018 U.S. Dist. LEXIS 139972 (S.D.N.Y. 2018) at *27-28. As such, where allegations concern misappropriation of trade secrets and related causes of action, courts routinely deny motions brought under Rule 12(b)(6) as being "premature."

It is therefore bedrock law in the Second Circuit that motions under Rule 12(b)(6) to dismiss claims based on misappropriation of trade secrets, implied licenses and related causes of action are to be denied due to the factual nature of the claims. As noted time and time again by the courts, such motions are premature and must be dismissed in their entirety.

**POINT II**

**DEFENDANTS' MOTION TO DISMISS IS FRAUGHT
WITH DISPUTED FACTUAL ISSUES**

Defendants' brief (hereinafter, "Def. Brief") in support of their misguided and premature motion to dismiss is fraught with disputed factual issues as to the allegations asserted by Plaintiff in the AVC. Rather than accepting the allegations of the AVC as true, and all reasonable inferences that may be drawn therefrom, Defendants dispute, argue and deny the allegations in contravention to guiding law under Fed. R. Civ. P. 12(b)(6). This, in and of itself, proves the premature nature of Defendants' motion and compels a finding that it be denied as a matter of law.

The following is but a sampling of the factual disputes raised by Defendants in their improper motion:

1. "Plaintiff's Complaint is based on the erroneous and unsupported belief that his knowledge about and experience with the insurance industry, developed at his prior employers and then brought to his employment at AmTrust is, for some reason, proprietary and purportedly therefore a 'trade secret.'" Def. Brief at 1.

Response: FALSE. The AVC sets forth with great specificity the software Pricing Tool – a tangible, complex software program – that Plaintiff developed over a period of twelve (12) years (AVC, ¶¶18-22). Contrary to Defendants' statement, the AVC makes no allegations concerning Plaintiff's "knowledge." Indeed, the Pricing Tool is a complex piece of software comprising tens

7

of thousands of data items obtained, processed and compiled by Plaintiff over many years and thousands of formulas and algorithms that process various data inputs to arrive at various outputs for pricing professional liability insurance based on countless input variables (AVC, ¶¶23-42). The Pricing Tool is based on vast sums of data accessed, obtained, compiled and processed by Plaintiff from numerous sources from over a twelve-year period (AVC, ¶¶43-48). This is not "knowledge" in Plaintiff's mind. This is physical, tangible trade secret information and property[2] as the law specifically recognizes. At best, Defendants create factual disputes as to Plaintiff's trade secret, which, as noted herein, are not to be resolved on a motion to dismiss under Second Circuit law.

2. "[T]he Complaint fails to allege, beyond impermissibly vague and conclusory language, that plaintiff ever -- during his approximate six-year employment by AmTrust -- treated or requested that others treat this knowledge as proprietary or a trade secret." Def. Brief at 1.

**Response:** FALSE. Again, as noted in footnote 1, Defendants fail – intentionally or ignorantly – to recognize that the Pricing Tool is a tangible piece of proprietary software and a trade secret. While Defendants insist on calling such property "knowledge," it clearly is not. Indeed, a copy of the software was provided to the Court and counsel for Defendants for the settlement conference on November 21, 2019, wherein Plaintiff demonstrated the software Pricing Tool to the Court. Moreover, if, as Defendants contend, the trade secret software program is mere "knowledge," how is it that it is stored on their computer servers for use by employees and why do Defendants refuse to stop using it and return it to Plaintiff" The answer is simple: the Pricing

---

[2] Indeed, prior to the settlement conference before the Hon. Katharine H. Parker, U.S.M.J. on November 21, 2019, Plaintiff forwarded a copy of the software program to the Court and counsel for Defendants for review and consideration. At the settlement conference, Plaintiff demonstrated the intricacies of his program to Judge Parker. To suggest that Plaintiff's trade secret is mere "knowledge" is absurd.

Tool is tangible property and Defendants' use of the term "knowledge" to what Plaintiff developed and owned prior to his employment with AmTrust is mere word games. Second, as set forth in the AVC, ¶¶61-70, Plaintiff undertook many extraordinary measures to safeguard his trade secret while employed at AmTrust:

- Commencing with his first day of employment with AmTrust until his termination, Plaintiff always referred to his Pricing Tool software program as his personal and proprietary property, including management meetings whenever discussion turned to the Pricing Tool. At no time did AmTrust ever object or refute Plaintiff's characterization of his software program as Plaintiff's personal property. AVC, ¶62.

- At no time was the Pricing Tool stored on AmTrust's central operating system and servers. For all relevant time periods, AmTrust maintained a computer system for the electronic storage of all of its owned, licensed or proprietary software, referred to as ANA 2.0, 3.0. Plaintiff specifically kept his trade secret software program outside of AmTrust's ANA 2.0 and revised ANA 3.0 operating systems during the nearly six (6) years that Plaintiff was employed by AmTrust. Plaintiff insisted that the Pricing Tool not be stored on AmTrust's central corporate operating system – where it may be viewed by others outside of Plaintiff's team – and that it be maintained separately at the sole and exclusive direction of Plaintiff. This was intentional and intended to safeguard Plaintiff's ownership of his proprietary trade secret software program. AmTrust, per Lewis, complied with Plaintiff's directives. AVC, ¶63.

- AmTrust company policy regarding software and technology would have required that AmTrust host the Pricing Tool on its own systems, but AmTrust did not do so because it recognized that the software program was the property of Plaintiff. AVC, ¶64.

- Plaintiff further insisted that internal AmTrust auditors and external third-party vendors be denied access to Plaintiff's Pricing Tool for fear that the valuable

9

software may be copied. Again, AmTrust, per Lewis, complied with Plaintiff's directives. AVC, ¶65.

- Despite Plaintiff's insistence of the unique treatment of his proprietary software program, and contrary to AmTrust policy that forbade such unique treatment, AmTrust nonetheless complied with Plaintiff's demands. This was far different than the other E&S business for which Lewis was responsible, wherein the rating/pricing capabilities were built directly into the ANA operating system. Upon information and belief, the other E&S business under Lewis' management represented approximately $135M annualized GL business. AVC, ¶66.

- Plaintiff undertook all precautionary steps to ensure that his trade secret software program was never accessed by third party vendors – and, upon information and belief, no third-party vendors ever gained access to the Pricing Tool. Indeed, Plaintiff, and Lewis at Plaintiff's instance, directed the Amtrust Ceded Reinsurance Department that Plaintiff's trade secret Pricing Tool should not be shared with reinsurance underwriters prior to or during audits. While employed at AmTrust, to Plaintiff's knowledge, his trade secret software program was never shared or sent to any third-party reinsurers. To the extent that AmTrust has shared Plaintiff's trade secret Pricing Tool with any third-party reinsurers, it was done after Plaintiff was terminated from AmTrust, or without his knowledge. AVC, ¶67.

- All of Plaintiff's direct reports and team members were trained by him and instructed to copy just a "snapshot" of the final Summary Input Output module page of the Pricing Tool to save in each bound underwriting file in ANA 3.0. The snapshot was a pdf image file of the final underwriting worksheet, so the actual trade secret software program was protected from third-party vendors , or other internal AmTrust auditors that may audit underwriting files. To Plaintiff's knowledge, no third-party vendors accessed his trade secret Pricing Tool during his employment with AmTrust. AVC, ¶68.

- Apart from licensing it to AmTrust, Plaintiff did not share his trade secret Pricing Tool software program with anyone else. AVC, ¶69.

Moreover, when Defendants demanded that Plaintiff assign or transfer his trade secret to them, Plaintiff refused:

- In or about May 2016, Plaintiff was requested by AmTrust general counsel David Saks ("Saks") to sign a proprietary rights document (the "Transfer Document") that would effectively transfer and convey Plaintiff's ownership rights in and to his trade secret software program to AmTrust. Plaintiff refused to sign the Transfer Document, thereby further evidencing his intent to protect and maintain his ownership rights in and to his personal, proprietary property. AVC, ¶71.

- Through an orchestrated email campaign, Saks threatened Plaintiff – either Plaintiff change his position and execute the Transfer Document to convey and assign his trade secret Pricing Tool software program to AmTrust, or AmTrust would withhold financial bonuses due and owing to Plaintiff. Plaintiff maintained his position, refusing to sign the Transfer Document. AVC, ¶72.

- Plaintiff's refusal to sign the Transfer Document had everything to do with Plaintiff protecting his proprietary rights and ownership interests in and to his trade secret software program that he had created and developed before commencing employment with AmTrust and which Plaintiff never intended to convey or transfer to the company. AVC, ¶73.

- Lewis was aware of Plaintiff's refusal to sign the Transfer Document and advised Plaintiff that he understood and would support Plaintiff's position. AVC, ¶74.

- The Employment Agreement provided that Plaintiff would be paid bonus compensation equal to three percent (3%) of "Net Underwriting Income" (the "Underwriting Bonus") in addition to the normal discretionary bonus. AVC, ¶75.

- In retaliation of Plaintiff's refusal to sign the Transfer Document, on or about May 2016, AmTrust withheld Plaintiff's Underwriting Bonus. Only after Plaintiff complained of the retaliation to AmTrust's then general counsel, Stephen Unger, did AmTrust pay Plaintiff an insulting $17,000; representing the *only* 3% Underwriting Bonus he received in 6 years against $186M GWP. AVC, ¶76.

Certainly, Defendants may deny the above allegations or offer different versions of the facts alleged in their defense of this suit. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), however, the above allegations – and all reasonable inferences that may be drawn therefrom – *must* be accepted as true. Defendants cannot escape the applicable legal standard.

3. "[A]lthough Plaintiff now contends that he 'licensed' this material to AmTrust, no written license is alleged (because none exists) and there are no factually specific allegations whatsoever in the Complaint regarding when, how or where such a licensing agreement was agreed to by Plaintiff and AmTrust . . ." Def. Brief at 1.

Response: FALSE. Plaintiff does not allege an express, written license with Defendants as to his trade secret and proprietary software property. Clearly, the AVC sets forth the specific prima facie factual elements of an implied license between Plaintiff and Defendants regarding their conditioned use of Plaintiff's trade secret Pricing Tool during Plaintiff's employment with the company. The AVC further sets forth the conditions as to Defendants' use of his trade secret and how that was resolved between and among the parties. See, *e.g.*, AVC, ¶¶49-60. Again, Defendants may deny the factual allegations giving rise to the implied license and the conditions of use by Defendants of Plaintiff's trade secret software program or they counter with their versions of the facts. However, such denials, defenses and dispute of facts are irrelevant for purposes of their motion. Plaintiff's allegations must be accepted as true.

Even more, in light of Defendants continued use of Plaintiff's trade secret software program, it is incumbent on Defendants – and not Plaintiff – to produce a license agreement that provides them the continued right to use Plaintiff's trade secret Pricing Tool. Defendants have not and cannot produce any license; as such, to this day, Defendants continue to misappropriate Plaintiff's trade secret and Defendants must be ordered to cease from using it and return it to Plaintiff.

4. "[T]he Complaint contends, without any supporting facts, that Plaintiff granted to AmTrust, at his sole discretion and allegedly as a condition of his employment, an unwritten 'implied license' . . ." Def. Brief at 1-2.

Response: FALSE. As noted immediately above, the AVC sets forth specific factual allegations regarding the agreement between Plaintiff and Defendants concerning Defendants' conditioned use of Plaintiff's trade secret Pricing Tool software program.

5. Obviously confused, Defendants decry Plaintiff's description in the AVC, ¶¶23-48, of his underwriting Pricing Tool as "turgid and nearly non-sensical underwriting jargon." Defendants then complain that the trade secret Pricing Tool software program comprises, in part, massive amounts of data and information accessed, obtained, compiled and processed by Plaintiff over a twelve-year period. Def. Brief at 3.

Response. Defendants are certainly entitled to slander and disparage Plaintiff and his trade secret all they want (all the while continuing to use it in lieu of spending millions of their own dollars over several years to develop their own proprietary software). That does not, however, obviate the settled law that the allegations of the AVC, and all reasonable inferences that may be drawn therefrom, are to be accepted as true. Moreover, Defendants conveniently ignore that it is well recognized under the law that trade secrets typically comprise data and information obtained from public sources (among other origins), and that the data is compiled and processed into valuable trade secret information. See DTSA, 18 U.S.C. §1836(b)(3)[3]

---

[3] The DTSA defines a "trade secret" as:

All forms and types of financial, business, scientific, technical, economic, or engineering *information*, including patterns, plans, *compilations*, *program devices*, *formulas*, designs, prototypes, methods, techniques, processes, procedures, *programs*, or *codes*, whether *tangible or intangible*, and *whether or how stored, compiled, or memorialized physically, electronically*, graphically, photographically, or in writing if --

(A) the owner thereof has taken reasonable measures to keep such information secret; and

6. "[T]he very email described in Plaintiff's Complaint completely contradicts Plaintiff's position that he treated the information as confidential." Def. Brief at 4.

Response. FALSE. The email forwarded by Plaintiff to defendant Lewis supports Plaintiff's allegations that he undertook concrete actions to keep his proprietary software Pricing Tool a confidential trade secret. Moreover, whether a single piece of evidence contradicts mounds of other evidence (see, AVC, ¶¶61-70, and above) is an issue to be tested in discovery. Plaintiff maintains, as set forth in the AVC at ¶59, that the email communication supports his efforts to safeguard and keep confidential his trade secret. Again, at best – *at best* – Defendants' argument is one of disputed fact, thereby precluding dismissal of Plaintiff's claims and entitling fact discovery by the parties as to the issue. Indeed, whether a single piece of evidence supports one party's position over the other party's position is a factual matter for the trier of fact.

7. "[M]ere conclusory allegations of a meeting of the minds is insufficient." Def. Brief at 4.

Response. The details of Plaintiff's hiring by AmTrust to create a new professional liability business/product line, including the meeting and various communications between Plaintiff and Defendants regarding Plaintiff's trade secret software program and the agreement reached by the parties whereby Plaintiff would license his trade secret to Defendants is set forth with specificity in the AVC at ¶¶49-60. Whether there was a meeting of the minds – as Defendants dispute – is a pure question of fact. While Defendants may deny any such agreement was reached, as is their right, such denial does not, as a matter of law, entitle Defendants to dismissal of the AVC.

---

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. §1836(b)(3) (emphasis supplied).

Moreover, whether there was an implied license – as Defendants now dispute despite overwhelming evidence to the contrary as set forth in the AVC (¶¶49-76) – is also a pure question of fact of which the parties may pursue their respective positions in discovery throughout the course of this litigation. These issues are to be resolved by the trier of fact and are improper for disposition on a motion to dismiss.

8. Disputing allegations in the AVC as to Plaintiff's intentions, Defendants argue "Instead, the Complaint makes the remarkable assertion that 'the Parties never intended that AmTrust would acquire any rights whatsoever in the Mason Proprietary Tool,' other than the apparent 'right' to employ Plaintiff. Complaint ¶ 59." Def. Brief at 5.

Response. At best, what was intended by the Parties as to Defendants' use of Plaintiff's trade secret Pricing Tool software program is a pure question of fact and an issue that Defendants may take up in discovery, as is their right. The AVC is quite specific as to the various efforts, actions, steps and measures that Plaintiff undertook to safeguard and keep confidential his trade secret – including his refusal to transfer it to AmTrust when the company so demanded (and, when Plaintiff refused to do so, AmTrust retaliated by firing Plaintiff). If Defendants maintain that Plaintiff intended to transfer to Defendants his proprietary rights in and to his trade secret Pricing Tool software program, Defendants may explore that position in fact discovery. The argument, however, is fatal to Defendants' motion and amounts to an admission that their motion seeking dismissal of the AVC is premature.

9. "This purported license cannot be examined, verified, interpreted or scrutinized, because it exists nowhere outside of Plaintiff's own mind." Def. Brief at 5.

Response. Defendants' argument demonstrates a fundamental misunderstanding of Plaintiff's claim of implied license and unjust enrichment. Plaintiff does not allege there existed an express license with Defendants as to their use of Plaintiff's proprietary trade secret. Rather,

**15**

Plaintiff alleges an implied license that allowed Defendants to use his proprietary Pricing Tool during Plaintiff's employment. Clearly, Plaintiff never assigned, granted, or transferred the trade secret – which existed before Plaintiff's employment – to Defendants and resisted all attempts by AmTrust to force and coerce Plaintiff into doing so. See AVC, ¶¶71-76. Whether there was an implied license – as Defendants now dispute despite overwhelming evidence to the contrary as set forth in the AVC (¶¶49-76) – is a pure question of fact of which the parties may pursue their respective positions in discovery throughout the course of this litigation.

10. "Plaintiff's next factually unsupported contention is that he 'undertook various steps and measures to properly maintain his ownership rights and interests in and to the Mason Proprietary Pricing Tool and ensure the integrity, secrecy, protection and confidentiality of the Tool . . .' Complaint ¶ 61. Once again, this contention is couched in purely conclusory language and once again the Complaint contains no actual facts to show how Mason acted to keep this material secret." Def. Brief at 5-6.

Response. FALSE. Apparently, Defendants did not read the AVC (or at least all of it), as it sets forth in express detail the various concrete efforts, actions and conduct by Plaintiff to safeguard and keep confidential his trade secret. See, AVC, ¶¶61-76. We will not (again) repeat those efforts, steps, measures and actions, but refer the Court to the AVC and pages 8-11 of this brief, above.

11. "Plaintiff contends that he always referred to the Spreadsheet as his proprietary property . . . but this is not accurate . . . Plaintiff contends that the pricing tool was not stored on a specific software program while at the same time freely admitting that it was 'maintained separately' at AmTrust . . . Yet, the question is not which of several AmTrust software systems the Complaint was stored on, the question is what, if any, different passwords or similar security protocols were used to protect the Spreadsheet . . ." Def. Brief at 6.

Response. Once again, Defendants are disputing facts, which is not allowed on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Even worse and fatal to their motion, Defendants are arguing facts as to whether Plaintiff's Pricing Tool software program constitutes a protectable trade secret and whether Plaintiff undertook the appropriate measures, steps and actions to protect that trade secret. This is inappropriate on a motion to dismiss and mandates that the motion be denied. Moreover, despite Defendants' protestations, the AVC is clear as to how Plaintiff maintained the confidential nature of his trade secret, see AVC, ¶¶61-76, including the storage of the software in specialized locations, see AVC, ¶¶63-68, which Defendants apparently have difficulty comprehending.

12. "The Complaint alleges that in May of 2016, Mason was requested "to sign a proprietary rights document (the 'Transfer Document') that would effectively transfer and convey Mason's ownership rights in and to the Mason Proprietary Pricing Tool to AmTrust . . . [A] copy of this purported 'Transfer Document,' which is, in reality, a Confidentiality and Proprietary Rights Agreement ('CPRA') which Amtrust requested all of its employees to sign, is attached to the W. Vita Affirmation as Exhibit C. [T]he CPRA applies to AmTrust's confidential and proprietary information . . . [I]f, as Plaintiff alleges (without support), the . . . [Pricing Tool] was truly Plaintiff's property, the CPRA would have had no effect on Plaintiff." Def. Brief at 6.

Response. Again, Defendants are disputing facts, which is not allowed on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Moreover, Defendants are asking the Court to draw inferences from their counter version of facts and claim – without *any* supporting extrinsic testimony, which is in any event barred on a motion to dismiss – that the alleged CPRA was provided to all AmTrust employees. Whether the CPRA was the document provided to Plaintiff, AmTrust's intent on providing the CPRA to Plaintiff, the scope of the CPRA – assuming that is the Transfer Document – all present questions of fact, are issues for discovery, and require

determination by the trier of fact. Indeed, a fair and reasonable reading of the CPRA attached as an exhibit to Defendants' motion papers concludes it was a draconian, forceful and coercive initiative by AmTrust to gain dominance, control and ownership over Plaintiff's trade secret Pricing Tool and that Plaintiff was in his right mind to refuse to sign it – or otherwise invite even greater risk to compromising his trade secret software program. Amazingly, Defendants now argue that Plaintiff had "nothing to worry about" had he signed the CPRA, but in light of Defendants' continued and obstinate refusal to return Plaintiff his trade secret property, their malicious intent is clear and obvious. A fair-minded jury would certainly so conclude.

13. "Plaintiff's factual allegations against Mr. Lewis are miniscule and inconsequential . . . None of this alleged conduct, even if true (*and Mr. Lewis will dispute virtually all of the allegations*) in any way forms a basis to support the causes of action asserted against Mr. Lewis and all of these claims should be dismissed." Def. Brief at 7 (emphasis supplied).

Response. First, the AVC *only* asserts misappropriation of trade secrets under the DTSA, 18 U.S.C. §§1831-1839 (Count I), against Lewis. See AVC Prayer for Relief, page 28. Lewis is specifically named under that count as the DTSA as a result of his active, personal participation and involvement in the misappropriation of Plaintiff's trade secret as provided by the DTSA.[4] In light of Lewis' active involvement in the thievery of Plaintiff's trade secret software program, it is befitting and proper that he be named as an individual defendant under the law since the DTSA specifically provides for individual liability. If, after full fact discovery, should Lewis so desire he may seek summary judgment if he believes his conduct and actions do not rise to the level of

---

[4] In order to establish a violation of 18 U.S.C. §1831 of the DTSA, the owner of the trade secret must prove: (1) the defendant stole or, without authorization of the owner, obtained, destroyed or conveyed information; (2) the defendant knew this information was proprietary; (3) the information was in fact a trade secret; and (4) the defendant knew the offense would benefit or was intended to benefit a foreign government, foreign instrumentality, or foreign agent.

DTSA culpability. At this juncture, however, dismissal of Lewis from the litigation is premature – particularly since Plaintiff's allegations – and all reasonable inferences therefrom – must be accepted as true.

Moreover, once again, Defendants resort to refutation of allegations: "Mr. Lewis will dispute virtually all of the allegations." Disputing facts is improper on a motion to dismiss: the movant must accept as true all of the allegations in the complaint and all reasonable inferences that may be drawn therefrom. Lewis can argue his case to the jury.

## POINT III

### SECOND CIRCUIT LAW DEMANDS THAT DEFENDANTS' MOTION TO DISMISS BE DENIED IN ITS ENTIRETY

As set forth under Point I, above, Second Circuit case law is clear: 1) where there exists disputed factual issues, motions to dismiss under Fed. R. Civ. P. 12(b)(6) must be denied, and 2) this is particularly so where the allegations in the complaint are directed towards misappropriation of trade secrets and related claims. The very claims that Defendants seek to dismiss[5] concern or are otherwise based on misappropriation of Plaintiff's trade secret Pricing Tool and the allegations in support of Plaintiff's claims are disputed in their entirety by Defendants. Defendants' motion is without merit.

While Second Circuit law in this regard is sufficiently set forth under Point I, above, some cases are particularly instructive to the pending motion and require further examination.

---

[5] As noted above in footnote 1, in their motion, Defendants do not seek to dismiss Count V of the AVC, which sets forth a cause of action based on breach of contract.

In *Medtech Prods. v. Ranir, LLC*, 596 F. Supp. 2d 778 (S.D.N.Y. 2008), the plaintiff brought claims for, among other causes of action, trade secret misappropriation, and a defendant filed a motion under Fed. R. Civ. P. 12(b)(6) seeking dismissal of that claim. The magistrate judge recommended, inter alia, that defendant's motion to dismiss the claim for trade secret misappropriation be denied and the defendant filed objections. The court reviewed *de novo* the issue of whether plaintiff had sufficiently alleged a claim for trade secret misappropriation to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

The plaintiff in *Medtech* alleged that it "expended considerable time, effort, and money developing its trade secrets, including but not limited to manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for its dental protectors." *Medtech*, 596 F. Supp. at 787-788. The plaintiff shared its developed trade secrets with the defendant with the expectation that it would be kept secret. Yet, while the defendant had no experience in the dental protector market, the defendant was able, through the plaintiff's information, to virtually eliminate the development time normally associated with entering into a new line of products. Objecting to the magistrate's recommendations, the defendant argued, among other issues (also relevant here) that the plaintiff's "vague and conclusory allegations do not sufficiently allege its possession of trade secrets," *Medtech*, 596 F. Supp. at 788, as the complaint did not specify in detail the nature of the alleged trade secrets. Nonetheless, the court in *Medtech* adopted the magistrate's recommendations, denying the defendant's motion to dismiss the trade secret claim. Id. at 791.

In doing so, the court in *Medtech* noted that the factors considered by courts to determine whether information constitutes a trade secret are "difficult to apply in the absence of discovery, making their consideration sometimes futile in the context of a motion to dismiss." *Medtech*,

footnote 5, citing *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 585-86 (E.D.N.Y. 2007) ("To consider these factors now [on a motion to dismiss] would be premature. . . . Without discovery, I cannot possibly weigh the six factors . . ."). Similar to the pending motion to dismiss before this Court, the court in *Medtech* noted that the defendant in that matter argued that "[The plaintiff] simply alleges a laundry list of independently unprotectable items, none of which are confidential, and does not allege that [the defendant] even used much of this information . . . . In sum, the specific 'combination of characteristics or components' which [the plaintiff] claims to be a trade secret allegedly used by [the defendant] is not actually identified within the [Second Amended Complaint]." The court in *Medtech* found the defendant's argument unavailing:

> As Magistrate Judge Smith appropriately pointed out, however, "the secrecy of particular information is an issue of fact and cannot be decided at the motion to dismiss stage." (R&R 12); see also *SD Protection, Inc.*, 498 F. Supp. 2d at 586 (stating that discovery is necessary before the court can determine whether the alleged trade secrets are protectable); *Kosower v. Gutowitz*, No. 00-CV-9011, 2001 U.S. Dist. LEXIS 19111, 2001 WL 1488440, at *8-9 (S.D.N.Y. Nov. 21, 2001) (denying motion to dismiss where plaintiff alleged that certain items were trade secrets and noting that whether the items actually were trade secrets could not be determined on a motion to dismiss).

*Medtech*, footnote 6.

*Kosower v. Gutowitz*, 2001 U.S. Dist. LEXIS 19111 (S.D.N.Y. 2001) is also instructive. In *Kosower*, the plaintiff brought, among other causes of action, a claim of trade secret[6] misappropriation against his purported partners as a result of their wrongful taking of plaintiff's contributions to a joint technical project. In their motion under Fed. R. Civ. P. 12(b)(6) to dismiss

---

[6] The court in *Kosower* noted that "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Kosower*, 2001 U.S. Dist. LEXIS 19111 at *26 quoting *Lehman v. Dow Jones & Co., Inc.*, 783 F.2d 285, 297 (2d Cir. 1986).

the trade secret count, the defendants argued that the plaintiff had not identified a trade secret. The

court in *Kosower* rejected that argument, holding that:

> The defendants argue that the plaintiff has not identified a trade secret. However, the complaint alleges that the defendants have misappropriated the plaintiff's Foreign Word Frequency Database and software in products marketed by the defendants. The plaintiff alleges that these items were trade secrets and has therefore sufficiently alleged the first element of a trade secret misappropriation claim. The factual issue of whether these items are in fact trade secrets cannot be decided on this motion to dismiss.
>
> The defendants argue that the Foreign Word Frequency Database and software is not secret because it was obtained from public sources. Secrecy is generally an issue of fact. *Lehman*, 783 F.2d at 298. The issue of whether these items were secret cannot be resolved on this motion to dismiss.
>
> Finally, the defendants argue that they owed the plaintiff no duty of confidentiality. However, the plaintiff alleges that he disclosed these secrets to Gutowitz in confidence as a fiduciary pursuant to their expected ongoing relationship. The issue of whether Gutowitz had an obligation to keep the Foreign Word Frequency Database and software confidential is an issue of fact that cannot be decided on this motion to dismiss.
>
> Because there are unresolved issues of fact that prevent the resolution of the plaintiff's trade secrets claim, the defendants' motion to dismiss Count IV is denied.

*Kosower*, 2001 U.S. Dist. LEXIS 19111 at *26-27.

Other jurisdictions adhere to the same legal principle: claims of trade secret

misappropriation and related causes of action should not be dismissed under Fed. R. Civ. P.

12(b)(6) as there are inherent factual issues that must be litigated. See, *e.g.*, *Pennfield Precision,*

*Inc. v. EF Precision, Inc.*, 2000 U.S. Dist. LEXIS 11971 *10-11 (E.D. Pa. 2000) (Indeed, "the

question of whether proprietary information constitutes a trade secret is an issue of fact, ordinarily

resolved by the fact finder after a full presentation of the evidence." *Protocomm Corp. v. Fluent,*

*Inc.*, 1995 U.S. Dist. LEXIS 40, Civ. A. No. 93-0518, 1995 WL 3671, *13 (E.D. Pa. Jan. 4, 1995)

(quoting *Project Development Group, Inc. v. O.H. Materials Corp.*, 766 F. Supp. 1348, 1355

(W.D. Pa. 1991), aff'd without op., 993 F.2d 225 (3d Cir. 1993)); *CDI Int'l, Inc. v. Marck*, 2005

U.S. Dist. LEXIS 23060 (E.D. Pa 2005) *17 ("The issue of whether a particular item or process is a trade secret is an issue of fact, usually decided by the fact finder after all of the evidence has been presented."); *Continental Data Systems, Inc. v. Exxon Corp.*, 638 F. Supp. 432, 441 (E.D. Pa 1986) ("The question whether proprietary information constitutes a trade secret is an issue of fact, ordinarily resolved by the factfinder after full presentation of evidence." citing *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286 (5th Cir. 1978)); *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1292-93 (S.D. Fl. 2001) ("[W]hether a particular type of information constitutes a trade secret is a question of fact. See *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 686 (11th Cir. 1998); *Camp Creek Hospitality, Inc. v. Sheraton Franch. Corp.*, 139 F.3d 1396, 1410-11 (11th Cir. 1998); *All Pro Sports Camp v. Walt Disney Co.*, 727 So. 2d 363, 368 (5th DCA 1999); see also 1 R. Milgram, Milgram on Trade Secrets, §2.23 at 2-32-33 (1984) ("Existence of a trade secret is a question of fact for the determination of the trier of fact, secrecy being a basic element."); Restatement of Law, Third, Unfair Competition, §39, cmt. d ("It is not possible to state the precise criteria for determining the existence of a trade secret. The status of information claimed as a trade secret must be ascertained through a comparative evaluation of all the relevant factors, including the value, secrecy, and definiteness of the information as well as the nature of the defendant's misconduct."). The law is clear that questions of fact cannot be resolved on motions to dismiss because the court must accept the plaintiff's allegations of the plaintiff's complaint as true. See *Malin v. Ivax Corp.*, 17 F. Supp. 2d 1345, 1358 (S.D. Fla. 1998)."); *Laser Indus. v. Eder Instrument Co.*, 573 F. Supp. 987, 991 (N.D. Ill 1983) ("The determination of whether information is a trade secret is an issue of fact, depending on the intent of the owner, treatment of the information and the remaining factors listed above.").

In the present matter, Defendants' motion under Fed. R. Civ. P. 12(b)(6) to dismiss Counts I-IV of the AVC is essentially a blanket denial of the allegations in the AVC and a counter statement of facts that are more appropriately suited for their responsive pleading, *i.e.*, their answer to the AVC. Under the law, all allegations in the AVC are to be accepted as true on their face and all reasonable inferences drawn therefrom are to likewise be taken as true. Defendants' motion fails in all respects to accept as true the allegations made in the AVC and the motion further fails to establish that Defendants are entitled to dismissal of the pleading as a matter of law.

## <u>CONCLUSION</u>

For all the reasons stated more fully above, the Court should deny in its entirety Defendants' motion under Fed. R. Civ. P. 12(b)(6) to dismiss Counts I-IV of the AVC.

Respectfully submitted,

By: _____

JARDIM, MEISNER & SUSSER, P.C.
Richard Meisner, Esq.
Richard A. Catalina, Jr., Esq.
30B Vreeland Road, Suite 100
Florham Park, New Jersey
973.845.7640
Attorneys for Eugene Mason

<u>Dated</u>: December 6, 2019