UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
EUGENE MASON,

                 Plaintiff,

   -against-


AMTRUST FINANCIAL SERVICES, INC.
and DAVID LEWIS,

                Defendants.
---------------------------------------X

Case 1:19-cv-08364-DLC

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

William E. Vita, Esq.
WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, New York 11556
Telephone: 516-622-9200
*Attorneys for Defendants*
*AmTrust Financial Services, Inc. and David Lewis*

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT......................................................................................................... 2

    A. Plaintiff's D.T.S.A. Claim Should Be Dismissed Because He Has Not Alleged Facts To Demonstrate That He Treated The Spreadsheet As A Trade Secret Or That Defendants Misappropriated The Spreadsheet. ........................ 2

    B. Plaintiff's D.T.S.A. Claim Against David Lewis Should Be Dismissed Because Plaintiff Has Not Alleged Facts Sufficient To Demonstrate a Legal Claim Against David Lewis. ................................................................................... 5

    C. The Complaint Fails to Sufficiently Allege a Common Law Trade Secret Claim Against AmTrust ................................................................................ 7

    D. The Complaint Fails to Establish the Elements of Unjust Enrichment ...................... 7

    E. The Complaint Fails to Sufficiently Allege a Breach of an Implied License ............. 8

III. CONCLUSION..................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*, 361 F.Supp.2d 283, 305 (S.D.N.Y.2005) ................................................................................................................ 7

*Kosower v. Gutowitz*, 2001WL 1488440 (S.D.N.Y. 2001) ............................................. 4

*Medtech Products Inc v. Ranir, LLC*, 596 F. Supp. 2d 778 (S.D.N.Y. 20008) ............... 4

*Mintz v. Mktg. Cohorts*, LLC, 2019 WL 3337896 (E.D.N.Y. 2019) ...................... 2, 3, 4

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ............................................ 7

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir.2000) ................................................................................................................. 9

*Structure Capital Solutions, LLC v. Commerzbank AG*, 177 F.Supp.3d 816, 832 (S.D.N.Y. 2016) ................................................................................................................................. 7

*Syntel Sterling Best Shores Mauritus Limited v. Trizetto Group, Inc.*, 2016 WL 5338550 (S.D.N.Y. 2016) ..................................................................................................... 2, 3, 4

*Xavian Insurance Co. v. Marsh & McLennan Companies, Inc.*, 2019 WL 1620754, at *5 (S.D.N.Y. 2019) ............................................................................................................. 3

**Statutes**

18 U.S.C. § 1839(5)). ....................................................................................................... 4

F.R.C.P. 12(b)(6) ............................................................................................................. 1

Defendants AmTrust Financial Services, Inc. ("AmTrust") and David Lewis ("Lewis") (sometimes collectively referred to as "Defendants") respectfully submit this Reply Memorandum in Further Support of their Motion to Dismiss Plaintiff's Amended Complaint ("Complaint").

I. **INTRODUCTION**

Plaintiff's opposition to this motion fails to address or ameliorate the fatal defects in the Plaintiff's Complaint, which, despite the Plaintiff's protestations to the contrary, consists of speculative and conclusory allegations which are insufficient to survive a F.R.C.P. 12(b)(6) Motion to Dismiss.

Plaintiff's Memorandum of Law in Opposition contends that the Defendants' moving papers merely create issues of fact, which must be resolved in Plaintiff's favor. To the contrary, the Defendants are not raising issues of fact about the claims in the Complaint, rather, the Defendants are pointing to the absence of actual allegations of fact sufficient to support the Plaintiff's claims. Instead of providing such facts, Plaintiff relies, on threadbare speculation dressed up as "facts."

In particular, Plaintiff's Complaint fails to sufficiently allege the existence of: 1) material which should be protected as a trade secret; 2) an unjust enrichment claim; and 3) an implied license agreement with AmTrust. Finally, the Complaint is devoid of allegations of specific conduct by David Lewis which would support the claim that he violated the Defend Trade Secrets Acts ("D.T.S.A.")[1].

For these reasons, the first four causes of action against AmTrust (for violation of trade secrets under both Federal and New York Common Law, unjust enrichment and breach of an implied

---

[1] Plaintiff has now conceded that the only cause of action brought against David Lewis is the first cause of action for violation of the D.T.S.A. and that none of the other causes of action apply to him.

1

license) should be dismissed. Similarly, the sole cause of action against David Lewis for violating the D.T.S.A. should be dismissed.

II. <u>ARGUMENT</u>

### A. Plaintiff's D.T.S.A. Claim Should Be Dismissed Because He Has Not Alleged Facts To Demonstrate That He Treated The Spreadsheet As A Trade Secret Or That Defendants Misappropriated The Spreadsheet.

Courts reviewing allegations that a party violated the D.T.S.A. consider what measures were taken by the alleged owner to protect those purported secrets.[2] For example, courts look for allegations that: 1) the information was subject to confidentiality provisions or similar limitations; and 2) the material was only accessible through controlled computer servers. *Syntel Sterling Best Shores Mauritus Limited v. Trizetto Group, Inc.*, 2016 WL 5338550 (S.D.N.Y. 2016). A court specifically rejected claims for trade secret misappropriation when a plaintiff "did not require defendant to sign a non-disclosure agreement, nor any sort of covenant to protect the passwords." *Mintz v. Mktg. Cohorts, LLC*, 2019 WL 3337896 (E.D.N.Y. 2019) (stating also that Plaintiff's allegations that she provided unique log-in credentials which she only disclosed when necessary and disclosed to the defendants for the "sole purpose" of accessing her trade secret were insufficient to demonstrate "reasonable measures" to protect trade secrets).

In the instant matter, the Complaint fails to allege that Plaintiff ever requested, during his several years working for Defendant AmTrust, that the Defendants sign confidentiality agreements or use specific and dedicated computer passwords to protect the purported secrets. These facts are undisputed. To be clear, what this Plaintiff did (or did not do) to treat his "Pricing Tool" (the "Spreadsheet") as a trade secret is not a factual issue, as Plaintiff claims in his opposition, because

---

[2] It is not at all clear that Plaintiff is actually the creator, author or owner of the allegedly proprietary material but that issue cannot be judicially determined by a motion to dismiss.

2

to the contrary there is a complete absence of factual allegations that Plaintiff took steps to protect the Spreadsheet by requesting the use of confidentiality agreements or dedicated computer passwords, or by taking other protective measures. For this reason, the Complaint simply does not meet the requirements articulated in the *Syntel* and *Mintz* cases.

Plaintiff's Opposition Brief, which contains a rather confusing discussion about which one of AmTrust's several computer systems hosted the Spreadsheet, cannot mask the Plaintiff's underlying concession that the Spreadsheet was loaded onto one of the computer systems used at AmTrust and no confidentiality agreements and/or dedicated computer passwords were required or requested by Plaintiff, thus enabling anyone at AmTrust to easily gain access to the Spreadsheet. Plaintiff's contention that the Spreadsheet was not stored on AmTrust's "Central Corporate Operating System" (Complaint, ¶ 63), is a distinction without a difference and it cannot hide the fact that AmTrust employees who reported to Plaintiff were trained by him to use the Spreadsheet on an AmTrust system. To put it another way, it does not matter where on AmTrust's computer systems the Spreadsheet was located. What matters is that the Spreadsheet was not considered or treated as a secret.

Nor does Plaintiff allege the type of factual allegations which were alleged in *Xavian Insurance Co. v. Marsh & McLennan Companies, Inc.*, 2019 WL 1620754, at *5 (S.D.N.Y. 2019). In *Xavian*, the plaintiff required a non-disclosure agreement before sharing the trade secret, required the destruction of any trade secret information when requested, marked the proprietary material as confidential at the bottom of each page, and reminded defendant in an email (when simultaneously sharing the trade secret) that the property was a trade secret and proprietary and not to "be disclosed outside of the [defendant's corporate] family." As demonstrated by the absence of any such allegations in Plaintiff's complaint, Plaintiff here took no such steps.

3

Finally, far from marking the Spreadsheet as private and confidential or labelling it in an email as a trade secret, as the plaintiff in *Xavian* did, the Spreadsheet here was merely sent to AmTrust in an unencrypted email without password protection, nor was the email or Spreadsheet labeled as confidential. These facts are undisputed.

Plaintiff cites *Kosower v. Gutowitz*, 2001 WL 1488440 (S.D.N.Y. 2001) for the proposition that secrecy is generally an issue of fact. However, in *Kosower*, the parties employed non-disclosure agreements to protect the subject material, unlike the instant case where Plaintiff made no attempt to secure non-disclosure agreements. *Id.* at *2. The other case cited by Plaintiff, *Medtech Products Inc v. Ranir, LLC*, 596 F. Supp. 2d 778 (S.D.N.Y. 20008), is similarly distinguishable because the parties in that case used confidentiality agreements, the use of which has not been alleged by Plaintiff here. Notably, *Syntel* and *Mintz* were both decided after *Kosower and Medtech* and specifically rely on the presence or absence of non-disclosure agreements when determining the existence of a trade secret.

None of the cases cited by Plaintiff involve an employee hired by a company to do a job, who then belatedly claimed that his knowledge and experience, as collated in written form, was a trade secret.

Even if Plaintiff could establish that he treated the Spreadsheet as a trade secret (which plaintiff has failed to do), in order to establish misappropriation of such a "secret" under the D.T.S.A., a plaintiff must establish that the defendant acquired a purported trade secret by using improper means or with knowledge, at the time of disclosure, that the trade secret was acquired through improper means. 18 U.S.C. § 1839(5)). Yet, the Complaint does not allege that AmTrust or Mr. Lewis acquired the Spreadsheet through improper means. Instead, the Complaint alleges that Plaintiff voluntarily sent the Spreadsheet (in the open and unencrypted email) to Mr. Lewis, so that the Spreadsheet could be used by Plaintiff and his team at AmTrust. (This email is attached

4

as Exhibit A to W. Vita's Affirmation in Support of the Motion to Dismiss the Amended Complaint.) Plaintiff also contends that the terms of his employment are stated in the Offer of Employment letter (attached as Exhibit B, to W. Vita's Affirmation) yet the Offer Letter does not mention any trade secrets, implied licenses or even the Spreadsheet itself. Thus, on its face, the Complaint fails to allege the necessary element that the defendant used improper means to acquire the Spreadsheet. This omission provides further grounds for dismissal of the D.T.S.A. claim.

### B. Plaintiff's D.T.S.A. Claim Against David Lewis Should Be Dismissed Because Plaintiff Has Not Alleged Facts Sufficient To Demonstrate a Legal Claim Against David Lewis.

There are no factual allegations sufficient to establish that the Spreadsheet was a trade secret or that any of the parties, including the Plaintiff and AmTrust, ever treated the Spreadsheet as proprietary and protectable. Even if Plaintiff has sufficiently alleged a D.T.S.A. claim as to AmTrust (which he has not), there is a complete absence of factual allegations that David Lewis, as an individual, ever violated the D.T.S.A.

After the description of how the Spreadsheet was provided to Mr. Lewis, Mr. Lewis is rarely even mentioned in the remainder of the twenty-four page Complaint. The bare allegations against Mr. Lewis include the following: 1) he stated, during a meeting with Barry Zyskind, AmTrust's CEO and Plaintiff on some unknown date, as follows: "Gene has his own pricing tool that he developed, which he will use" (Complaint, ¶ 51); 2) the Plaintiff "was hired with the explicit understanding, under the License Arrangement (by both Mason and senior executives at AmTrust, including both Lewis and Zyskind, among others), that Mason would use and license the Mason Proprietary Pricing Tool to AmTrust for their joint use during his employment tenure with the Company" (Complaint, ¶ 58); and 3) "Lewis, at Mason's insistence, directed the AmTrust Ceded Reinsurance Department that the Mason Proprietary Pricing Tool should not be shared with three insurance underwriters prior to or during audits." (Complaint, ¶ 67).

These quotations from the Complaint are the sum and substance of the allegations that Mr. Lewis somehow violated the D.T.S.A. Yet, as can be clearly seen from the quotations, none of these allegations claim that either Plaintiff or Mr. Lewis described or acknowledged that the Spreadsheet was a protectable trade secret. Nor does Plaintiff provide specific factual allegations that Mr. Lewis personally acquired the Spreadsheet through improper means (indeed, the Complaint alleges the opposite, that Plaintiff voluntarily sent Mr. Lewis the Spreadsheet), misappropriated the Spreadsheet, breached the purported implied license or is wrongfully using the Spreadsheet.

The factual allegations as to David Lewis are miniscule. Plaintiff concedes, as he must, that he sent the Spreadsheet to David Lewis in an unprotected email from the Plaintiff's home server to Mr. Lewis' home server. Neither the email, nor the Spreadsheet was marked as confidential, proprietary, licensed, or a trade secret. Nor did the email describe the Spreadsheet as proprietary. Far from requesting that Mr. Lewis sign a confidentiality agreement, the plaintiff merely stated the following six words: "David, here's my pricing tool - Gene." Thus, there is an objective absence of facts to establish that any party, including Mr. Lewis, intended the Spreadsheet to be a trade secret or treated it as such. Plaintiff simply has not alleged any specific facts sufficient to show that David Lewis acquired the alleged trade secret by improper means or knew it was a trade secret.

The Complaint makes no allegations, whatsoever, that Mr. Lewis is using the Spreadsheet. If he is not using it, then he is not misappropriating it.

Far from creating a factual dispute, the complete absence of factual allegations against Mr. Lewis require the cause of action against him to be dismissed.

6

## C. The Complaint Fails to Sufficiently Allege a Common Law Trade Secret Claim Against AmTrust

The Complaint concedes, as it must, that Plaintiff shared the Spreadsheet with the AmTrust employees who reported to him and his "team members." The Complaint does not allege that these employees and team members were required to sign Confidentiality agreements or non-disclosure agreements. They were, therefore, under no obligation to protect the confidentiality of the Spreadsheet. Yet, under New York common law, any property right to a purported trade secret is extinguished if the alleged donor of that trade secret discloses it to "others who are under no obligation to protect the confidentiality of the information." *Structure Capital Solutions, LLC v. Commerzbank AG*, 177 F.Supp.3d 816, 832 (S.D.N.Y. 2016) *quoting Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see also Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*, 361 F.Supp.2d 283, 305 (S.D.N.Y.2005) (where "[t]he information that [counterclaimant] contends constitutes trade secrets is information that Bear Stearns was expressly authorized to disclose in connection with a loan securitization ... such information cannot possibly fit within even the broadest interpretation of New York's definition of a trade secret" as a matter of law).

Once again, this is not a disputed fact but rather an absence of facts. And this absence is fatal to Plaintiff's common law claim for misappropriation of trade secrets.

The common law trade secrets claim is also fatally defective for all the reasons articulated in the Section II.A. of this Reply discussing the D.T.S.A. claim.

## D. The Complaint Fails to Establish the Elements of Unjust Enrichment

Plaintiff's unjust enrichment cause of action is defective for the reasons articulated in § IV (C) of the Defendants' Memorandum of Law in Support of its Motion to Dismiss.

Significantly, the Plaintiff's Opposition Memorandum of Law does not even mention the unjust enrichment claim. This omission on the Plaintiff's part confirms AmTrust's position that if

the Spreadsheet is not a protectable trade secret, then the unjust enrichment claim must fail. For the reasons stated in the original Memorandum of Law, as well as in the earlier sections of this Reply Memorandum of Law, the plaintiff has failed to establish the elements of a trade secret.

Plaintiff was hired to use his knowledge as a high level insurance executive to set up a premium pricing method for AmTrust and equity does not require AmTrust to pay the plaintiff in perpetuity for the system he set up, pursuant to his job duties, after he was terminated for cause. In a similar way, an employee of an advertising firm is not paid for setting up an ad campaign after the employee leaves the advertising firm. How the employee sets up the campaign and whether or not the employee used previously acquired knowledge about target demographics or prepared ad layouts before the employee came to the firm are simply not grounds for paying the employee for the use of that ad campaign after the employee leaves his or her job.

Furthermore, despite Plaintiff's argument, nothing was "converted" by AmTrust. Plaintiff provided the Spreadsheet for his team at AmTrust to use in determining the amount of insurance premiums for certain lines of professional liability insurance. Plaintiff provided the Spreadsheet to AmTrust openly and voluntarily and therefore, Amtrust did not use improper means to acquire this material. Yet, Plaintiff contends that AmTrust has been enriched at the Plaintiff's expense by its use of the Spreadsheet. To make this argument, Plaintiff ignores the fact that he is now in the same position that he was in before his employment at AmTrust.

### E. The Complaint Fails to Sufficiently Allege a Breach of an Implied License

For the reasons articulated in AmTrust's Memorandum of Law in Support of the instant motion, the Plaintiff's Complaint fails to properly allege a breach of implied license.

Specifically, Plaintiff ignores the ruling by the Second Circuit, which holds that courts have only found implied licenses in narrow circumstances where one party "created a work at [the

8

other's] request and handed it over, intending that [the other] copy and distribute it. *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir.2000).

The Complaint fails to allege any facts to support either element of the Second Circuit's test. The Spreadsheet was not created at AmTrust's request, rather, accepting the allegations of the Complaint at face value, it was created many years prior to Plaintiff's involvement with AmTrust. Similarly, the Spreadsheet was not handed over to AmTrust with the intention that AmTrust would copy and distribute it. Again, the only allegations in the Complaint are completely to the contrary. Nor is there any allegation (beyond purely conclusory language), to indicate that there was a meeting of the minds between the parties about an implied license, as confirmed by the conduct of the parties. This is not a factual issue, rather, there is an absence of any specific factual allegations to indicate that AmTrust ever acted as if it intended to enter into an implied license with Mason. Instead, Plaintiff seems to take the position that there was an implied license because, within his own mind, he wanted such a license to exist. Obviously, this is not a sufficient basis to allege such a cause of action.

### III. CONCLUSION

For all these reasons stated in the Defendants' original motion papers, as well as in this Reply Memorandum of Law, it is respectfully requested that the only remaining count against David Lewis (Count I) be dismissed and that Counts I, II, III, IV be dismissed against Defendant AmTrust, and that the Court grant such further and other relief as it deems just and proper.

Dated: Uniondale, New York
December 20, 2019

_____
WILLIAM E. VITA

02123746