UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
EUGENE MASON,                        :
                                     :
                         Plaintiff,  :        19cv8364 (DLC)
                                     :
             -v-                     :        OPINION AND ORDER
                                     :
AMTRUST FINANCIAL SERVICES, Inc. and :
DAVID LEWIS,                         :
                                     :
                         Defendants. :
                                     :
------------------------------------ X

APPEARANCES

For the plaintiff:
Richard Seth Meisner
Jardin Meisner & Susser, P.C.
30B Vreeland Rd., Ste. 201
Florham Park, NJ 07932
(973) 845-7640

For the defendants:
William Edward Vita
Westerman, Ball, Ederer, Miller & Sharfstein, LLP
1201 RXR Plaza
Uniondale, NY 11556
(516) 622-9200


DENISE COTE, District Judge:

        On November 7, 2019, defendant AmTrust Financial Services

("AmTrust") moved to dismiss four of the Amended Complaint's

five counts pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Defendant David Lewis moved to dismiss the one count in the

Amended Complaint that also was brought against him.  For the

following reasons, the defendants' motions are granted.

## **Background**

The following facts are drawn from the Amended Complaint and documents integral to the Amended Complaint. They are assumed to be true for the purpose of addressing the motions.

In September 2013, Eugene Mason was hired by AmTrust as Senior Vice President, Professional Liability, to create a line of professional liability insurance. While interviewing with AmTrust prior to being hired, Mason informed senior executives at AmTrust, including defendant Lewis, that he already had built a model for pricing insurance premiums for numerous classes of professionals, such as lawyers, accountants, and architects, to name a few (the "Pricing Model"). The Pricing Model, which Mason developed between 1998 and 2010, is a Microsoft Excel spreadsheet that allows underwriters to input basic, client-specific information to calculate the price of a client's insurance premiums. It relies on publicly available data compiled by Mason, as well as formulas that he developed.

According to Mason, prior to his employment at AmTrust, he reached a "meeting of the minds" with AmTrust executives that his employment at the company was a condition of AmTrust's use of the Pricing Model. As alleged by Mason, this understanding was so clear that there was "no need for a formal written licensing agreement." In an employment agreement dated September 26, 2013 (the "Employment Agreement"), which the

Amended Complaint alleges "memorialized" the "terms of Mason's employment with AmTrust," there is no mention of the Pricing Model.[1]  In October 2013, after Mason was hired by AmTrust, Mason emailed his Pricing Model to Lewis, stating simply, "Dave, Here's my pricing tool."  His message did not include any cautionary statement warning that the email contained confidential or proprietary information.

Mason's employment at AmTrust continued until July 17, 2019.  Throughout this time, Mason explains, he "undertook various steps and measures to properly maintain his ownership right" in the Pricing Model.  Mason alleges that he: (1) "referred" to the Pricing Model as his "personal and proprietary property," (2) "insisted" that the Pricing Model "not be stored" on AmTrust's central corporate operating system, (3) "instructed" his team members not to send the Pricing Model to internal auditors and external vendors, and (4) "insisted" that internal auditors and external vendors be denied access to it.  According to Mason, his refusal to sign a confidentiality and proprietary rights agreement in May 2016 also "had everything to

---

[1] The Employment Agreement provided that, subject to terms and conditions, Mason was eligible for a bonus equal to 3% of "Net Underwriting Income."  This term is the subject of Mason's breach of contract claim.  AmTrust has not sought dismissal of this claim.

do with" his intention to protect his ownership interest in the Pricing Model.

On July 17, 2019, AmTrust terminated Mason's employment. On July 19, Mason sent AmTrust a cease and desist letter demanding that AmTrust stop using the Pricing Model. After AmTrust informed Mason that it was not in possession of "proprietary information" or "trade secrets," Mason filed this action on September 9. The same day, he moved for a preliminary injunction enjoining AmTrust from using the Pricing Model.

On October 2, the defendants moved to dismiss the complaint. At a conference held on October 3, Mason informed the Court that, rather than oppose the motion, he intended to file an amended complaint and amended motion for a preliminary injunction. An Order of October 4 directed Mason to file any amended complaint by October 18 and advised that he likely would not have another opportunity to amend. On October 18, Mason filed the Amended Complaint, thereby mooting the October 2 motion to dismiss.[2] The Amended Complaint contains a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, against AmTrust and Lewis, as well as state law claims for misappropriation of trade secrets,

---

[2] Mason also filed an amended motion for a preliminary injunction on October 18. Briefing on that motion has been stayed pending the resolution of the instant motion.

unjust enrichment, breach of implied license, and breach of contract against AmTrust.

On November 7, AmTrust moved to dismiss all of the claims, except the claim for breach of contract, and Lewis sought dismissal of the DTSA claim. This motion became fully submitted on December 20.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation omitted). A claim to relief is plausible when the factual allegations in a complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Progressive Credit Union v. City of New York, 889 F.3d 40, 48 (2d Cir. 2018) (citation omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017) (citation omitted). The plaintiff must plead enough facts to "nudge[] [its] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (citation omitted).

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R.

Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." Coal. for Competitive Elec. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted). A court may also consider any documents that are "'integral' to the complaint." Sierra Club, 911 F.3d at 88. A document is "deemed 'integral' to the complaint when the complaint relies heavily upon its terms and effect." Palin v. New York Times Co., 940 F.3d 804, 811 (2d Cir. 2019) (citation omitted).

I. DTSA Claim

The defendants have moved to dismiss Mason's DTSA claim on the ground that the information Mason seeks to protect is not a "trade secret" within the meaning of the DTSA and is therefore not entitled to protection under that statute. "The question of whether or not [information] is a trade secret is generally a question of fact." A.F.A Tours, Inc. v. Whitchurch, 937 F.2d 82, 89 (2d Cir. 1991). In order to recover under the DTSA, however, Mason must adequately plead that the information he seeks to protect qualifies as a "trade secret."

The Economic Espionage Act, which creates criminal liability for trade secret theft, was amended by the DTSA to create a federal civil cause of action for owners of

misappropriated trade secrets.  Pub. L. No. 114-153.  The DTSA

provides that information is a "trade secret" if

> (A) the owner thereof has taken <u>reasonable measures</u> to
> keep such information secret; and

> (B) the information derives independent economic
> value, actual or potential, from not being generally
> known to, and not being readily ascertainable through
> proper means by, another person who can obtain
> economic value from the disclosure or use of the
> information.

18 U.S.C. § 1839(3) (emphasis supplied).  The statute does not

provide further guidance on what constitutes "reasonable

measures" to keep the information secret, and the Second Circuit

has not yet construed this statutory term.

But, a comprehensive definition of "reasonable measures" is

not needed to conclude that Mason's descriptions of the measures

he took to keep secret the Pricing Model were not "reasonable"

as a matter of law.  A plaintiff asserting a trade secrets claim

must plead sufficient facts to give a defendant fair notice of

the "reasonable measures" the plaintiff took to keep the

information secret.  Without such a description, the plaintiff

has not adequately pleaded the existence of a trade secret whose

misappropriation is actionable under the DTSA.

Although Mason outlines a number of "measures" he took to

protect the Pricing Model, none of these measures would

reasonably ensure that Mason's information would be kept secret

from AmTrust following his employment at the company, or, at any

point, from third parties.  Taking as true Mason's allegation

that AmTrust's use of the Pricing Model was conditioned on

Mason's employment at AmTrust, it was unreasonable for Mason not

to have this agreement described with particularity in his

Employment Agreement or a stand-alone licensing agreement.  It

also was unreasonable for Mason not to have AmTrust sign a non-

disclosure agreement to prevent AmTrust from sharing the Pricing

Tool with third parties.  Mason was similarly careless in

emailing the Pricing Model to Lewis without designating its

contents confidential or proprietary.

In arguing to the contrary, Mason contends that there are

disputed issues of fact rendering dismissal of this claim

inappropriate at this phase of the litigation.  Accepting all of

Mason's allegations as true, however, he has nonetheless failed

to plausibly plead that he took reasonable steps to protect the

Pricing Model.[3]

## II.   Misappropriation of Trade Secrets under New York Common Law

AmTrust seeks dismissal of Mason's state law

misappropriation of trade secrets claim.  Under New York law,

"[a] plaintiff claiming misappropriation of a trade secret must

---

[3] The defendants also argue that the DTSA claim must be dismissed
because Mason has failed to adequately allege that they
"misappropriated" the Pricing Model.  It is not necessary to
reach this argument to find that Mason has failed to state a
claim under the DTSA.

prove: (1) it possessed a trade secret, and (2) [the] defendant
is using that trade secret in breach of an agreement,
confidence, or duty, or as a result of discovery by improper
means." E.J. Brooks Co. v. Cambridge Security Seals, 80 N.Y.S.
3d 162, 171 (2018) (citation omitted); Faiveley Transport Malmo
AB v. Wabtec Corp., 559 F.3d 110, 117 (2d Cir. 2009). Like the
DTSA, New York law requires that "the possessor of a trade
secret take reasonable measures to protect its secrecy."
Defiance Button Mach. Co. v. C&C Metal Products Corp., 759 F.2d
1053, 1063 (2d Cir. 1985) (citation omitted); see also Faiveley,
559 F.3d at 117 ("New York courts have considered . . . the
extent of measures taken by the business to guard the secrecy of
the information . . . ." (citation omitted)). Thus, for the
same reasons that Mason has failed to state a claim under the
DTSA, Mason did not sufficiently plead a trade secret claim
under New York law.

   III.  Breach of Implied License

   Next, AmTrust seeks dismissal of Mason's breach of implied
license claim. The existence of an "implied license" is a
defense to a claim of copyright infringement. SmithKline
Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211
F.3d 21, 25 (2d Cir. 2000). This defense is applied in "narrow"
circumstances "where one party created a work at the other's
request and handed it over, intending that the other copy and

                              9

distribute it." Id. (citation omitted).  This is not a copyright case; the law of implied license has no relevance here.

In any event, had Mason alleged a claim for breach of implied contract, that claim would fail.  Under New York law,

> [a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct.  It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.

Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 582 (2d Cir. 2006) (citation omitted).  Like an express contract, a contract implied in fact "requires such elements as consideration, mutual assent, legal capacity and legal subject matter."  Leibowitz v. Cornell Univ., 584 F.3d 487, 507 (2d Cir. 2009), superseded by statute on other grounds (citation omitted).  "Courts often find and enforce implied promises by interpretation of a promisor's word and conduct in light of the surrounding circumstances."  Beth Israel, 448 F.3d at 582 (citation omitted).  "A contract cannot be implied in fact," however, "where there is an express contract covering the subject matter involved."  Julien J. Studley, Inc. v. New York News, Inc., 518 N.Y.S. 2d 779, 780 (1987).  "[I]t is an elementary principle of contract law that,

where there exists an express contract for compensation, an action outside that contract will not lie." Leibowitz, 584 F.3d at 507 (citation omitted).

Mason has failed to adequately plead facts supporting a claim for breach of implied contract. Mason has not pleaded factual allegations that give rise to the reasonable inference that AmTrust assented to the purported implied contract. While Mason alleges that he and certain AmTrust executives had a "meeting of the minds" regarding the terms of AmTrust's use of the Pricing Model, Mason does not describe any conduct on the part of AmTrust that is consistent with his theory that he and AmTrust agreed that AmTrust would use the Pricing Model only when Mason was employed at the company. Mason therefore has provided no more than a threadbare recital of the elements of a breach of implied contract claim.

Mason's breach of implied contract also fails due to the Amended Complaint's allegations that AmTrust's use of the Pricing Model was a term and condition of his employment. Specifically, Mason alleges that the purported implied contract provided that AmTrust's use of the Pricing Model "was solely conditioned on Mason's employment with AmTrust and the financial compensation to be paid by AmTrust to Mason in accordance with the terms and conditions of his employment." But, as Mason alleges, the "terms of Mason's employment with AmTrust were

memorialized in . . . the "Employment Agreement[,]" which set forth the "terms and conditions" of AmTrust's "obligation to Mason, . . . particularly as to the financial compensation obligations owed by AmTrust to Mason." Nowhere in the Employment Agreement, including its comprehensive provisions on compensation, is there any mention of Mason's Pricing Model. Because there is an express contract governing the terms of Mason's employment with AmTrust, in particular his compensation, Mason cannot now claim that he had an implied contract providing that AmTrust's use of his Pricing Model was a term of his compensation and employment with AmTrust.

        IV.   Unjust Enrichment

        AmTrust argues that Mason has failed to state a claim for unjust enrichment. To state a claim for unjust enrichment in New York, a plaintiff must allege that "(1) defendant was enriched (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit defendant to retain what is sought to be recovered." Kaplan v. Reed Smith LLP, 919 F.3d 154, 160 (2d Cir. 2019) (citation omitted). The theory of unjust enrichment "lies as a quasi-contract claim." Beth Israel, 448 F.3d at 586 (citation omitted). As the New York Court of Appeals has explained, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for

                                    12

events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 521 N.Y.S.2d 653, 656 (1987). Unjust enrichment, therefore, "is an obligation the law creates in the absence of any agreement." Beth Israel, 448 F.3d at 586 (citation omitted) (emphasis in original).

For the same reason that Mason cannot state a claim for breach of implied license, Mason cannot succeed on a claim for unjust enrichment. Because a contract, the Employment Agreement, governs the terms and conditions of his employment at AmTrust, in particular his compensation, Mason is precluded from recovering under a theory of unjust enrichment. Indeed, Mason has pleaded a breach of contract claim.

## Conclusion

The defendants' November 7, 2019 motion to dismiss is granted. The DTSA claim against Lewis is dismissed. Counts one, two, three, and four of the Amended Complaint against AmTrust are dismissed. The sole remaining claim in this action is Mason's breach of contract claim brought against AmTrust.

Dated:    New York, New York
          March 23, 2020

                              DENISE COTE
                    United States District Judge

13